#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BRYAN CHAPPELL**,

        **Plaintiff,**

v.                                                    **CIVIL ACTION NO. 1:16cv206**
                                                                              (Judge Keeley)

**UNITED STATES OF AMERICA,**

        **Defendant.**

### REPORT AND RECOMMENDATION

### I. PROCEDURAL HISTORY

On September 26, 2016, the Plaintiff initiated this action by filing a complaint under the Federal Tort Claims Act in the United States District Court for the Southern District of Indiana. ECF No.1. On October 28, 2016, the case was transferred to this Court because the Plaintiff's claims arose from an incident at USP Hazelton which is located in Preston County, West Virginia and is in the jurisdiction of the Northern District of West Virginia.[1] ECF No. 8.

On November 1, 2016, an order was entered by this court directing the Plaintiff to re-file his complaint on the court approved form in conformity with the Local Rules of Prisoner Litigation. ECF No. 11. On November 21, 2016, the Plaintiff filed his complaint on the court approved form. ECF No. 15. On March 30, 2017, the Defendant was ordered to file an answer. ECF No. 16. On August 31, 2017, following three court approved extensions of time, the Defendant filed a Motion to Dismiss, or alternatively, for Summary Judgment together with a Memorandum in Support and a number of

---

[1] Prior to the transfer, the Plaintiff was granted leave to proceed *in forma pauperis* and directed to pay an initial partial filing fee of $5.20. ECF No. 4. The initial fee was paid on October 26, 2016. ECF No. 7.

exhibits. ECF Nos. 29, 30, 34. 36. The Court issued a Roseboro Notice on September 5, 2017. ECF No. 37. Following one approved extension of time, the Plaintiff filed his Response in Opposition on October 31, 2017. ECF No. 46.

## II. THE PLEADINGS

### A. The Complaint

In his complaint, the Plaintiff alleges that on September 24, 2015, he was transported from USP Hazelton to a hospital by Correctional Officers Andrews and McMillan, and during the transport, they intentionally injured him. More specifically, he alleges that he told the escorting officers that the leg shackles were too tight, and in response, C.O. Andrews and C.O. McMillan tightened them further. As a result, he maintains that the shackles cut into his legs. He also alleges that Andrews later warned him that if he reported the incident, he would kill him. In addition, the Plaintiff alleges that after he was placed in a hospital bed, Andrews and MacMillan placed plastic restraints on his ankles and purposely pulled them so tight they they cut into his ankles. The Plaintiff continues that Andrews and McMillan left him shackled to a bed with the restraints cutting into his legs. As a result of the alleged actions of Andrews and MacMillan, the Plaintiff indicates that he received cuts and lacerations on both ankles which became infected and resulted in scarring, disfigurement, great pain and caused him to fear for his life. For relief, he seeks an award against the United States in the amount of $150,000.

### B. The Defendant's Motions

In support of their Motion to Dismiss, the Defendant argues that it is immune from lawsuits, like the Plaintiff's, alleging that federal employees negligently or wrongfully

performed a discretionary function, and federal courts lack subject matter jurisdiction to address such claims. The Defendant elaborates that BOP employees have discretion to apply leg restraints when escorting "In custody"[2] inmates like to Plaintiff into the community.

In the alternative, the Defendant alleges that even if the Plaintiffs allegations were justiciable and fully factually supported, his complaint fundamentally fails to present, nor can he establish, any cognizable legal claim. More specifically, the Defendant maintains that the Plaintiff has not adequately pleaded, nor can he establish, a viable negligence claim. In addition, the Defendant contends that the Plaintiff has not adequately pleaded, nor can he establish, a viable intentional tort claim.

C. The Plaintiff's Response

First, the Plaintiff argues that the doctrine of *res judicata* forecloses the Defendant's argument. The Plaintiff expounds on this argument by noting that a complaint need only satisfy the requirements of Rule 8(a), and the Court conducted a preliminary review and screening which concluded that summary dismissal was not appropriate. With respect to the Defendant's motion for summary judgment, the Plaintiff argues that he has established that the actions of Andrews and MacMillan were not discretionary, but instead, were an intentional infliction of harm outside the boundaries of BOP policy. In addition, the Plaintiff contends that Anderson and MacMillan were not

---

[2] Every BOP inmate is assigned a custody level based upon the inmate's criminal history, the offense for which he is incarcerated, and how well he adjusted to his federal correctional facility. ECF No. 30-2, p. 3, ¶ 12. An inmate's custody classification level dictates the degree of staff supervision required for the inmate. Id. There are four custody levels, including, "COMMUNITY." "OUT," "IN," and "MAXIMUM." Id. In September, 2015, when the Plaintiff alleges that he was injured, he was classified as an "In custody" inmate. Id. p.4, ¶ 13.

3

investigative or law enforcement officials, and therefore, the United States is not shielded from assault and battery claims.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). Courts long have cited "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, supra, at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999).

However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 18 (7th Cir.1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy. Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir.2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir.2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

**B. Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of

evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV. ANALYSIS

**A. Jurisdiction and Applicability of the Federal Tort Claim Act**

The United States enjoys sovereign immunity except to the extent that Congress has waived such immunity by enacting the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.* The FTCA provides in § 2674 that:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Jurisdiction for violations of the FTCA is governed by 28 U.S.C. § 1346 which provides in subparagraphs (b)(1) and (b)(2):

> (b)(1) [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
> (2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or any agency, officer, or employee of the Government for mental or emotional injury suffered while in custody without a prior showing of a physical injury.

The FTCA waives the Government's traditional immunity from suit for claims based on the negligence of its employees. The Act also "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The Government cannot be sued, however, unless Congress has waived the

Government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953).

The FTCA's waiver of the sovereign immunity is narrow and subject to a number of exceptions, with the majority codified in 28 U.S.C. § 2680, including the discretionary function exception and the intentional tort exception. If any exception set forth in 28 U.S.C. § 2680 applies in an action, the United States retains sovereign immunity, and the District Court has no subject matter jurisdiction. Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir.1998). Therefore, if either the discretionary function or intentional tort exception applies, the court lacks jurisdiction to hear the case. Williams v. United States, 50 F.3d 299, 304-5 (4th Cir. 1995); Jackson v. United States, 77 F.Supp.2d 709, 713 (D.Md. 1999).

### 1. The Discretionary Function Exception to FTCA Liability

The discretionary function exception is codified in subsection (a) of the statute:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

A district court considering whether the discretionary function exception bars an FTCA claim must determine whether: (1) the action taken involves choice by the acting government employee or a specific course was mandated by statute, regulation or policy; and (2) the choice is "of the kind that the discretionary function was designed to

shield." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1959 (1988). "When established governmental policy . . . allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. 315, 324, 111 S.Ct. 1267, 1274 (1991).

Because "the United States retains its immunity for torts involving a 'discretionary function or duty' of the Government, regardless of whether or not the discretion was abused," a plaintiff cannot obtain relief for any tort alleged to have been committed by an agent who was performing such a discretionary function. Jackson, supra, at 713. Thus, the Plaintiff must establish that the Government's agents were not performing a discretionary function at the time he alleges he was injured, and that the Government was not exempt from the FTCA pursuant to subsection (a).

2. **The Intentional Tort Exception to FTCA Liability**

As set forth below, subsection (h) of 2680 carves out an exception for intentional torts:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For purposes of this subsection, 'investigative or law enforcement officers' means any officer of the United States who is empowered by law to execute

>   searches, to seize evidence, or to make arrests for violations
>   of Federal law.

28 U.S.C. § 2680.

As is evident from this provision, the FTCA treats law enforcement officers differently. While the first portion of §2680(h) bars intentional tort claims, later in the same sentence, the statute allows a plaintiff to bring a claim against a law enforcement officer or investigator alleging: assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. In addition, this exception covers law enforcement officers and investigators as governmental actors, rather than their duties, and the Government may be held liable when law enforcement officers commit a tort outside the scope of his or her employment, even if it has nothing to do with law enforcement or investigation. See Ignacio v. United States, 674 F.3d 252, 253 (4th Cir. 2012). Therefore, under the FTCA's intentional tort exception, the United States is not liable for the intentional torts of its employees unless those acts are committed by law enforcement officers of the United States. Correctional officers are considered "law enforcement officers" pursuant to 28 U.S.C. § 2680(h).  See Millbrook v. United States, 133 S.Ct. 1441 (2013).

In the instant case, the Plaintiff alleges that the two correctional officers, and in particular Andrews, deliberately tightened the shackles and then the plastic ties. Therefore, his complaint sounds as an assault or battery, one of the intentional torts. Therefore, assuming that the discretionary function applies, the question arises whether this Court retains subject matter jurisdiction pursuant to ¶ 2680(h) and its provision

relating to law enforcement officers. As determined by the Fourth Circuit the answer is yes.

In Medina v. United States, the Fourth Circuit concluded that courts must read the two subsections together. 259 F.3d 220, 226 (4th Cir. 2001). Medina, a diplomat, was indicted on a number of charges, including attempted rape, burglary, and simple assault and battery. Id. at 222. Although he was acquitted on all charges except simple assault and battery, INS officials arrested him and initiated deportation proceedings. Id. After the INS terminated these proceedings, Medina filed a claim pursuant to the FTCA, claiming assault and battery, false arrest, malicious prosecution, and infliction of emotional distress in conjunction with his arrest. Id. at 223.

In the decision, the Fourth Circuit concluded that a plaintiff who alleges an intentional tort against a law enforcement officer or investigator pursuant to § 2680(h) must first clear the discretionary function hurdle codified in § 2680(a). Id. at 222, 26. More specifically, the court found that "the very purpose of the § 2680(a) discretionary function exemption is to immunize certain agency conduct that might violate state law." Id. at 225-28.  Therefore, "actions underlying intentional tort allegations, described in § 2680(h), if  authorized and implemented with federal law and the Constitution of the United States may be considered discretionary functions under § 2680(a), even if they would otherwise constitute actionable torts under state law." Id. at 226 citing Jackson v. United States, 77 F.Supp.2d 709, 714 (D.Md. 1999)  ("The Court holds that a FTCA plaintiff must first overcome the discretionary function 'hurdle' before the Court will consider intentional tort claims under § 2680(h).  Therefore, "[i]f a defendant can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an

13

FTCA claim, even if the discretionary act constitutes an intentional tort under § 2680(h)." Gasho v. United States, 39 F.3d 1420, 1435 (9th Cir. 1994).

Accordingly, a district court considering whether the intentional tort exception applies, must determine if the Government's employees, in this case the correctional officers who Plaintiff claims injured him, were performing a discretionary function at the time the alleged injuries occurred. If the Court determines that to be the case, the Government and its employees are immune from liability pursuant to the holdings in Medina, Jackson and Gasho.

### B. This Court is Without Subject Matter Jurisdiction Because Government Agents Performed a Discretionary Function as Contemplated by the FTCA

Conduct is discretionary where the actor is entrusted to exercise judgment or choice. Gaubert, 499 U.S. at 322-23. In contrast, conduct is not discretionary where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, "leaving the employee "no rightful option but to adhere to the directive." Id.

The BOP has a discretionary duty of care to maintain order within its facilities pursuant to 18 U.S.C. § 4042 , which provides, in pertinent part, that, "[t]he Bureau of Prisons under the direction of the Attorney General, shall ... provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." Courts of Appeal have interpreted this statute as granting the BOP discretion in its implementation. "While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in

or avoid while attempting to fulfill their duty to protect inmates." Calderon v. United States, 123 F.3d 947 (7th Cir. 1997). See Carter v. United States, 2002 WL 32332081, *5 (D.S.C.), 57 Fed.Appx. 208 (4th Cir. Mar.14, 2003) (citations omitted). Specifically, there is no BOP rule, regulation, or policy that expressly requires or prohibits the use of leg restraints when an "In custody"[3] inmate like the Plaintiff is escorted into the community.

When an "In custody" inmate is escorted outside the BOP correctional facility, BOP policy mandates that handcuffs with martin chains[4] be used at all times. ECF No. 30-2, p. 4, ¶ 15. However, there is no BOP rule, regulation or policy that expressly requires or prohibits the use of leg restraints when an "In custody" inmate is escorted outside of the BOP correctional facility. Id. Instead, this decision is based upon the discretion and judgment of the BOP's staff. Id.

The FTCA's discretionary function exception only applies to discretionary conduct that is based on social, economic or political goals. Gaubert, 499 US at 322-23. Where an established government policy, such as the BOP policies outlined above, allows a Government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion. Id. at 324. Therefore, a complaint cannot survive a motion to dismiss unless it alleges facts that would support a finding that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Id. at 324-25. The BOP's decision to grant officer's discretion with respect to how to best ensure the safety of the public when

---

[3] See Footnote 2.

[4] Martin chains are chains that connect to the handcuffs and loop around the inmate's torso.

transporting prisoners derives from considerations of public policy. Accordingly, the decision to apply leg restraints during the Plaintiff's transport to the hospital falls within the discretionary function exception to the FTCA. El-Hanifi v. U.S., 2015 WL 72804 at *10 (S.D.N.Y. Jan. 6, 2015) (citing Berkovitz v. United States, 486 U.S. 431, 537 (1988)).

There is no dispute that Correctional Officers Andrews and McMillan escorted the Plaintiff to the local hospital on September 24, 2015. Nor does the Defendant dispute the Plaintiff's allegation that leg shackles and then plastic ties were used. To the extent that the Plaintiff alleges that the restraints were too tight and caused him physical harm, the discretionary function is applicable, and the United States is immune from the Plaintiff's complaint. Moreover, the individuals identified by Plaintiff as the Government agents who injured him are correctional officers, and as such they are subject to both the same liability and immunity which applies to law enforcement officers. Because the alleged intentional torts of those agents were implemented consistent with federal law and the Constitution, those actions may properly be considered discretionary functions. Accordingly, the undersigned finds that even if the actions of the BOP correctional officers were considered intentional torts, because those actions were performed consistent with federal law, the actions were discretionary functions, and the Government is thus immune from suit under the FTCA.

Finally, the undersigned recognizes that in his response to the Defendant's alternative motions, he has attached an affidavit. For the first time in the affidavit he alleges that while in the hospital, Correctional Officer Andrews put his hands against his throat and started choking him to the point that he began to lose consciousness. ECF

No. 46-1, p. 4, ¶¶ 30-31. In addition, for the first time, the Plaintiff alleges that Correctional Officer Andrews pulled a pistol, pointed it at his head and told him he was going to kill him and claim that he was making an escape attempt. Id. at p. 5, ¶ 41.

First, a party generally cannot raise new allegations in response to a motion for summary judgment. Temple v Oconee Cty., 2014 WL 4417702 at 12 (D.S.C. Sept. 8, 2014) aff'd 595 Fed Appx. 246 (4th Cir. 2015). Moreover, pursuant to the provisions of the FTCA, the administrative process must be fully exhausted before FTCA claims may be brought in an action in federal court. 28 U.S.C. § 2675(a). Administrative exhaustion under the FTCA requires an inmate to submit written notification of the incident accompanied by a sum certain for monetary damages to the federal agency responsible for the activities giving rise to the claim. See 28 C.F.R. § 14.2(a) and (b)(1).

In the instant case, the Plaintiff filed an administrate tort claim, or SF-95, which he signed on January 7, 2015. ECF No. 30-1 at p. 9. Although the Plaintiff supplied great detail regarding the use of the leg shackles and "wire tie" restraints, nowhere in his administrative claim does he even hint at Correctional Officer Andrews chocking him to near unconsciousness or pointing a loaded gun at him. Therefore, the undersigned finds that the BOP was not afforded the opportunity to investigate these claims, and they are not exhausted for purposes of this complaint.

For all of these reasons, the undersigned finds that the District Court lacks subject matter jurisdiction and that this matter should be dismissed.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Defendant's Motion to Dismiss or, alternatively, for Summary Judgment [ECF No. 29] be **GRANTED**,

and the Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION.**

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985); Wells v. Shriners Hosp., 109 F.3d 198 (4th Cir 1997).

The Clerk of the Court is directed to send a copy of this Order to the Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

DATED: June 22, 2018

/s *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE