IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BRYAN CHAPPELL,**

    **Plaintiff,**

**v.**                            **CIVIL ACTION NO. 1:16CV206**
                                        **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

Pending before the Court is the Report and Recommendation of United States Magistrate Judge Robert W. Trumble, recommending dismissal of the complaint filed by the pro se plaintiff, Bryan Chappell ("Chappell"). For the reasons that follow, the Court **ADOPTS** the Report and Recommendation (Dkt. No. 48), **GRANTS** the defendant's motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 29), and **DISMISSES** Chappell's complaint **WITHOUT PREJUDICE** (Dkt. No. 1).

### I. BACKGROUND

On September 26, 2016, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. ("FTCA"), Chappell filed a complaint against the United States ("the defendant") in the United States District Court for the Southern District of Indiana (Dkt. No. 1). Pursuant to 28 U.S.C. § 1402(b), and because Chappell's claim arises from his incarceration at USP Hazelton, a federal

**CHAPPELL V. USA**                                                    **1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS
[DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48],
AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

correctional institution located in the Northern District of West Virginia, the case was transferred to this Court on October 28, 2016 (Dkt. No. 8).[1]

In his complaint, Chappell alleges that certain officers employed by the Bureau of Prisons ("BOP Officers") intentionally injured him during a medical transport from USP Hazelton to a local hospital (Dkt. No. 15). Specifically, he alleges that, when he advised the Officers that his leg shackles were too tight, they "in turn . . . tightened the shackles," and then "intentionally left [him] shackled to a [hospital] bed, with the restraints cutting into [his] legs." Id. at 6. He further alleges that one of the Officers later "warned . . . that he would kill [him] if he reported" the incident, placing him "in fear for [his] life." Id. at 6, 9. As a result of the cuts to his legs, Chappell allegedly suffers from "permanent scarring, disfigurement, [and] great pain." He seeks $150,000 in damages. Id. at 9.

Pursuant to 28 U.S.C. § 636 and this Court's local rules, the Court referred the complaint to Magistrate Judge Trumble for initial review and a Report and Recommendation ("R&R"). Thereafter,

---

[1] Shortly thereafter, on November 21, 2016, Chappell filed his complaint on the court-approved form (Dkt. No. 15).

**CHAPPELL V. USA**                                                    **1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

the defendant moved to dismiss Chappell's complaint for lack of subject matter jurisdiction and for failure to state a cognizable claim. Alternatively, it moved for summary judgment on his "contradictory and factually unsupported" claims (Dkt. No. 29). After being granted an extension of time in which to do so, Chappell filed a response in opposition to the defendant's alternate motions (Dkt. No. 46).

On June 22, 2018, Magistrate Judge Trumble entered a Report and Recommendation ("R&R") recommending that the Court grant the defendant's motion and dismiss Chappell's FTCA claim without prejudice (Dkt. No. 48). Specifically, the R&R concluded that the "discretionary function" exception applies in this action, thereby shielding the United States from liability and depriving the Court of subject matter jurisdiction. Id. at 14-16 (citing United States v. Gaubert, 499 U.S. 315, 322 (1991)). The R&R further concluded that, to the extent Chappell attempted to raise additional claims in an affidavit he attached to his response brief, those claims are barred as administratively unexhausted. Id. at 16-17.

The R&R informed Chappell of his right to file "written objections identifying those portions of the Report and Recommendation to which objection is made, and the basis for such

**CHAPPELL V. USA**                                              **1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

objection." The Court received Chappell's timely "Objection to the Magistrate's Report and Recommendations" on July 9, 2018 (Dkt. No. 50). This case is now ripe for decision.

## II. STANDARDS OF REVIEW

**A.    Review of the R&R**

When reviewing a magistrate judge's R&R, the Court must review <u>de novo</u> only the portions to which an objection has been timely made. 28 U.S.C. § 636(b)(1)(C). On the other hand, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the prisoner does not object." <u>Dellacirprete v. Gutierrez</u>, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983)). Moreover, the pleadings and objections of a <u>pro se</u> plaintiff are entitled to liberal construction. <u>See</u> <u>DiPilato v. 7-Eleven, Inc.</u>, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (noting that <u>pro se</u> objections should be "accorded leniency" and "construed to raise the strongest arguments that they suggest" (internal quotation omitted)).

**B.    Rule 12(b)(1)**

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may move to dismiss an action for lack of subject matter jurisdiction. "A

**CHAPPELL V. USA                                          1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

defendant may contest subject matter jurisdiction in one of two ways: by attacking the veracity of the allegations contained in the complaint or by contending that, even assuming the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper." Durden v. United States, 736 F.3d 296, 300 (4th Cir. 2013) (citing Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). When a defendant challenges the existence of subject matter jurisdiction, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995) (internal quotation marks and citations omitted). The Court may consider evidence outside of the pleadings, whether by affidavit, deposition, or live testimony, without converting the motion into one for summary judgment. Id. The burden is on the plaintiff to prove that subject matter jurisdiction exists. Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

### III. DISCUSSION

Chappell objects to the recommendations in the R&R that: 1) the Court should dismiss his complaint based on the discretionary function exception to the FTCA; and 2) certain additional claims

**CHAPPELL V. USA** 1:16CV206

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

outlined in his affidavit have not been fully exhausted. The Court addresses each of these objections in turn below.

**A. Discretionary Function**

    **1. Applicable Law**

The FTCA provides a cause of action for suits against the United States alleging state law torts. "But the FTCA does not create a statutory cause of action against individual government employees." Harbury v. Hayden, 522 F.3d 413, 416 (D.C.Cir. 2008). Suits against government officers in their official capacities, and those against government agencies, are treated as suits against the government entity itself. See Kentucky v. Graham, 473 U.S. 159 (1985). Accordingly, in such suits, the defense of sovereign immunity is available unless Congress has chosen to waive it.

Under 28 U.S.C. §§ 1346(b), Congress has waived sovereign immunity for claims brought against the United States based on the negligence or wrongful acts or omissions of its employees committed within the scope of employment. 28 U.S.C. §§ 1346(b)(1), 2671-2680. This waiver is a narrow one, however, and subject to an exception for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or

**CHAPPELL V. USA** 1:16CV206

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

not the discretion involved be abused." Id. § 2680(a). "Because waivers of sovereign immunity must be strictly construed, the plaintiff bears the burden of demonstrating jurisdiction and showing that none of the FTCA's exceptions apply." Wood v. United States, 845 F.3d 123, 127 (4th Cir. 2017) (citing Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005)).

Determining whether the so-called "discretionary function" exception applies requires application of a two-step analysis. First, a court must determine whether the conduct in question "involves an element of judgment or choice." Berkovitz ex rel. Berkovitz v. United States, 486 U.S. 531, 536 (1988). When a statute, regulation, or policy prescribes the employee's conduct, the conduct cannot be discretionary and thus is unprotected by the discretionary function exception. Id.; see also United States v. Gaubert, 499 U.S. 315, 322 (1991).

Second, even where the challenged conduct involves judgment or choice, a court must still determine whether the decision made was "based on considerations of public policy." Berkovitz, 486 U.S. at 537. "This second step of the analysis is designed to prohibit courts from 'second guessing' decisions 'grounded in social, economic, and political policy through the medium of an action in

**CHAPPELL V. USA**                                      **1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

tort.'" Wood, 845 F.3d at 128 (quoting Gaubert, 499 U.S. at 323). "When established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324.

The Fourth Circuit has long cautioned that "[a]ll waivers of sovereign immunity must be 'strictly construed . . . in favor of the sovereign.'" Welch v. United States, 409 F.3d 646, 650 (4th Cir. 2005) (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)). Of importance to the analysis is the principle that "it is the plaintiff's burden to show that . . . none of the statute's waiver exceptions apply to his particular claim." Id. at 651. Should the plaintiff fail to meet this burden, his claim must be dismissed. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001).

### 2.  The Report and Recommendation

In his R&R, Magistrate Judge Trumble observed that the "discretionary function" exception precludes governmental liability for "any claim based upon . . . the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government,

8

**CHAPPELL V. USA**                                                    **1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

whether or not the discretion involved be abused" (Dkt. No. 48 at 10)(quoting 28 U.S.C. § 2680(a)). Accordingly, he applied the two-part test from Berkovitz and Gaubert to determine whether the discretionary function exception bars suit against the United States in this case.

Here, after considering the nature of the conduct involved, he determined that the conduct at issue was the Officers' decision to use leg restraints when transporting Chappell to a local hospital, and concluded that whether to apply leg restraints is a decision within the BOP's judgment (Dkt. No. 48 at 14-15). Next, he concluded that the Officers' conduct "derives from considerations of public policy," such as how "best [to] ensure the safety of the public when transporting prisoners." Id. at 15-16. Based on this analysis, he concluded that the discretionary function exception applied to shield the United States from liability for Chappell's FTCA claim. Id. at 16.

3.  **Analysis**

Chappell contends that the challenged conduct is not the Officers' decision to apply leg restraints but rather their "intentional tighten[ing] of [the restraints] to the point of causing physical injury" to him (Dkt. No. 48 at 6). Because the

9

**CHAPPELL V. USA** 1:16CV206

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

Officers' conduct in tightening the restraints "was not authorized by any Policy or Procedure," he asserts that it is unprotected by the FTCA's discretionary function exception. Id. at 7.

### a. Use of Restraints

As an initial matter, and as adequately explained in the R&R, a prison official's decision about how to restrain a prisoner during transport involves an element of judgment or choice. Although 18 U.S.C. § 4042(a) provides that the Bureau of Prisons has the duty, among others, to provide for the safekeeping and care of all inmates, it does not specifically set forth the manner in which that goal is to be carried out. Officers therefore have substantial discretion to determine how to carry out their actions. See, e.g., Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997) (stating that "while it is true that [section 4042] sets forth a mandatory duty of care, it does not . . . direct the manner by which the BOP must fulfill this duty[ ]").

Furthermore, prison officials make decisions regarding the application of restraints during a staff-escorted medical trip pursuant to the policy outlined in BOP Program Statement 5538.07, Escorted Trips (the "Escort Policy"). See Dkt. No. 30-2 at 31-50.

**CHAPPELL V. USA** 1:16CV206

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

Section 570.44 of the Escort Policy sets forth certain "Supervision and Restraint Requirements," providing that

> [i]nmates under escort will be within the constant and immediate visual supervision of escorting staff at all times. **Restraints may be applied to an inmate going on an escorted trip, after considering the purpose of the escorted trip and the degree of supervision required by the inmate.**

Dkt. No. 30-22 at 40 (emphasis added). The Escort Policy further provides, in relevant part, that for inmates with a custody level of "IN,"[2] "[h]andcuffs with martin chains will be used at all times. **Additional restraint equipment may be used at the escorting officers' discretion**." Id. at 44 (emphasis added).

It is undisputed that, at the time of the challenged conduct, Chappell was being transported into the community under escort, and that he was classified as an "IN custody" inmate. Citing Chappell's custody classification and the relevant provisions of the Escort Policy, the R&R concluded, and the parties seemly agree, that the

---

[2] According to BOP Program Statement P5100.08, Inmate Security Designation and Custody Classification, "IN custody" is "[t]he second highest custody level assigned to an inmate which requires the second highest level of security and staff supervision. An inmate who has IN custody is assigned to regular quarters and is eligible for all regular work assignments and activities under a normal level of supervision. [However,] [i]nmates with IN custody are not eligible for work details or programs outside the institution's secure perimeter" (Dkt. No. 30-2 at 62).

**CHAPPELL V. USA** 1:16CV206

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

Officers' application of leg restraints, in addition to the requisite "handcuffs with martin chains," while transporting Chappell was discretionary (Dkt. No. 48 at 14-15). See also Chappell's "Objection," Dkt. No. 50 at 6 ("Plaintiff has no quarrel with the requirement that he be shackled [during an escorted trip], under BOP Policy").

The relevant Escort Policy provisions do not provide a specific, mandatory course of conduct for BOP officers to follow in supervising and restraining prisoners during a staff-escorted trip; rather, they give the officers ample room for the exercise of their judgment by providing factors for them to consider (e.g., "the purpose of the escorted trip," and "the degree of supervision required by the inmate")(Dkt. No. 30-22 at 40). Significantly, the Escort Policy explicitly states that "[a]dditional restraint equipment may be used **at the escorting officers' discretion**. Id. at 44 (emphasis added).

Other courts have concluded that the choice of when restraints should be used rests with the BOP. See, e.g., El-Hanafi v. United States, No. 1:13-CV-2072, 2015 WL 72804, at *10 (S.D.N.Y. Jan. 6, 2015)(concluding that the "ultimate decision as to which restraints are appropriate remains entirely within the [BOP's] discretion,

12

**CHAPPELL V. USA                                           1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

and, indeed, is a classic example of act that requires the officers' judgment as to which of a range of permissible courses is the wisest")(internal quotation marks and citation omitted).

The magistrate judge correctly concluded that decisions regarding the application of restraints during prisoner transport are grounded in public policy, such as how best to ensure the safety and security of prisoners, BOP staff, and the public when escorting prisoners into the community. Accordingly, because the Officers' conduct "involve[d] an element of choice or judgment," and because the decision itself was "based on considerations of public policy," Berkovitz, 486 U.S. at 536-37, the Court adopts the recommendation of the R&R and concludes that the Officers' decision to apply leg restraints when escorting Chappell into the community falls with the FTCA's discretionary function exception.

### b. Manner of Application

Having concluded that the BOP's decision to apply leg restraints during the transport of prisoners into the community for medical treatment is discretionary, the Court turns next to the precise issue raised in Chappell's objections, whether prison officials also have discretion regarding the manner in which those restraints are applied. As noted earlier, Chappell contends that

**CHAPPELL V. USA**                                                  1:16CV206

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

the Officers intentionally and impermissibly tightened his leg restraints after he complained that they were causing him discomfort (Dkt. No. 15 at 6; 50 at 6-7).

Chappell concludes that the initial shackling was authorized but asserts that "What occurred thereafter was not authorized by any Policy or Procedure" (Dkt. No. 50 at 7). BOP Policy Statement P5566.06, Use of Force and Application of Restraints (the "Restraint Policy"), however, provides for a certain amount of judgment or choice as to the manner in which any restraints are to be applied.

Section 6 of the Restraint Policy sets forth certain "Principles Governing the Use of Force and Application of Restraints," and, in relevant part, provides that

> **h.** [r]estraint equipment or devices (e.g., handcuffs) may not be used in any of the following ways:
>
> > **(1)** As a method of punishing an inmate;
> >
> > ...
> >
> > **(3)** In a manner that causes unnecessary physical pain or extreme discomfort; ....

Dkt. No. 30-2 at 14 (emphasis in original). Critically, the Restraint Policy goes on to state that, "[i]n general, when applying restraints, **staff will use sound correctional judgement**

**CHAPPELL V. USA** 1:16CV206

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

**[sic] to ensure unnecessary pressure is not applied to the inmate**. Id. at 14 (emphasis added). The Policy further recognizes that, while restraints may not be "improperly applied" or "unnecessarily tight[]," the "proper application of restraints may result in some discomfort." Id. at 14-15.

Thus, although the Restraint Policy prohibits prison officials from using restraints in a manner that causes unnecessary pain or discomfort, it does not mandate a specific, non-discretionary course of conduct to ensure that unnecessary pressure is not applied to the restrained prisoner. Rather, much like the Escort Policy, the Restraint Policy explicitly gives officers ample room for the "use of sound correctional judgement [sic]" in their course of conduct. Accordingly, decisions regarding the manner in which restraints are tightened, including the officers' determinations as to the appropriate amount of pressure to be applied, necessarily involve an element of choice or judgment. Further, as to decisions regarding the application of restraints during prisoner transport, decisions regarding the manner in which those restraints are applied are grounded in public policy considerations, including the safety and security of prisoners and BOP staff.

**CHAPPELL V. USA**                                                      **1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

Finally, although the question whether the Officers intentionally applied too much pressure to Chappell's restraints may present a genuine issue of material fact, the Officers' actions in this case fall within the broad realm of the "discretionary function" exception. And, as set forth in the statutory language, that exception applies regardless of whether the agent for the government abused his discretion. 28 U.S.C. § 2680(a). Therefore, even if, after being advised by Chappell that his leg restraints were uncomfortably tight, the officers responded by tightening his restraints further, such abuse of the Officers' discretion in the application of restraints would fall within the ambit of the exception.

The Officers' declarations state either that they do not recall Chappell or do not recall his alleged complaints about his leg restraints (see Dkt. Nos. 30-4 at ¶¶ 9, 11, 13; 30-5 at ¶¶ 4-5).[3] Chappell maintains his assertions to the contrary (see Dkt.

---

[3] More particularly, Officer Edgar Andrews states that he was not personally involved in restraining Chappell during the September 24, 2015, escorted trip, and that he does not recall Chappell complaining that his leg restraints were too tight during his trip to the hospital (Dkt. No. 30-4 at ¶¶ 7-11, 13). Officer Marshall McMillen states that, while he does not specifically recall Chappell or the September 24, 2015, trip, he does not recall any inmate ever alleging that he or she suffered physical discomfort or injury because his or her restraints were applied too tightly during an

**CHAPPELL V. USA**                                              **1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

No. 50 at 6-7), but does not dispute that, at the time of the challenged conduct, he was an "IN custody" prisoner being escorted into the community and that the Officers were permitted to restrain him pursuant to the BOP's Escort and Restraint Policies. Accordingly, even when Chappell's allegations are taken as true, the Officers' actions can be considered, at most, an abuse of discretion regarding how they chose to restrain a prisoner in the community. They therefore fall within the "discretionary function" exception. See, e.g., Calderon v. Foster, No. 5:05-CV-00696, 2007 WL 1010383, at *6 (S.D.W. Va. Mar. 30, 2007), aff'd sub nom. Calderon v. Corr. Officer Foster, 264 F. App'x 286 (4th Cir. 2008)(concluding that, even where a prison official's intent was a genuine issue of material fact, his decision to kick a cell door while a prisoner was on the toilet "could be categorized as an abuse of discretion in discipline, and within the ambit of the exception").

In light of the application of the discretionary function exception to the FTCA's waiver of sovereign immunity, the Court concludes that Chappell's claim against the United States is barred and subject to dismissal.

---

escorted trip (Dkt. No. 30-5 at ¶¶ 4-5).

**CHAPPELL V. USA**                                             **1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

**B.   Affidavit**

Chappell also objects to the R&R's conclusion that additional FTCA claims outlined in an affidavit he submitted in response to the government's motion ("Affidavit") were not fully exhausted and cannot be pursued in the instant complaint (Dkt. No. 50 at 2-6). He contends that he "presented" his claims to the BOP, as required by 28 C.F.R. § 14.2. Id. at 2, 4.

It is well-established, and Chappell does not argue otherwise, that the administrative process must be fully exhausted before FTCA claims may be brought in an action in federal court. 28 U.S.C. § 2675(a). Pursuant to 28 C.F.R. § 14.2, "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for . . . personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2; see also Phillips v. Driver, No. 1:07-CV-102, 2009 WL 5067525, at *2 & n.1 (N.D.W. Va. Dec. 16, 2009), aff'd, 440 F. App'x 176 (4th Cir. 2011). Accordingly, administrative exhaustion under the FTCA required Chappell to submit written notification of the incidents cited in the Affidavit to the BOP, as the federal

**CHAPPELL V. USA**                                                        **1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

agency allegedly responsible for the activities giving rise to his claims.

Here, the record reflects that Chappell filed an administrative tort claim, or Standard Form 95 ("SF-95"), with the BOP on January 7, 2016 (Dkt. No. 30-1 at 9-11). As also alleged in the instant complaint, in his SF-95, Chappell alleged that during a medical transport on September 24, 2015, the Officers applied "leg shackles" that were "too tight" and which "cut[] into his ankles," and that when he complained about the shackles Officer Andrews refused to loosen them. Id. at 9. As in the instant complaint, he further alleged that, sometime after returning to USP Hazelton, Officer Andrews threatened him with bodily harm. Id. at 11. Chappell's Affidavit, however, clearly raises additional claims that were not included in his original SF-95. For example, he now alleges that, while he was restrained to a bed in the local hospital, Officer Andrews "placed his hand against [his] throat" and choked him until he began to lose consciousness, and then "pulled a pistol," which he pointed at Chappell's head while "pulling on" his leg restraints (Dkt. No. 46-1 at 5-6). Because Chappell never mentioned these incidents in his SF-95, the BOP has not been afforded the opportunity to investigate, or make final dispositions of, these additional claims. Accordingly, the Court

**CHAPPELL V. USA**                                                                 **1:16CV206**

**MEMORANDUM OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [DKT. NO. 50], ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 48], AND DISMISSING COMPLAINT WITHOUT PREJUDICE [DKT. NO. 1]**

concludes that they have not been exhausted for purposes of Chappell's FTCA complaint. 28 U.S.C. § 2675(a).

## IV. CONCLUSION

In conclusion, for the reasons discussed, the Court:

1. **ADOPTS** the R&R (Dkt. No. 48);

2. **OVERRULES** Chappell's objections (Dkt. No. 50);

3. **GRANTS** the defendant's motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 29);

4. **DENIES as MOOT** the defendant's motion to dismiss for failure to state a claim or, in the alternative, for summary judgment (Dkt. No. 29); and

5. **DISMISSES** Chappell's FTCA claims **WITHOUT PREJUDICE** for lack of subject matter jurisdiction (Dkt. No. 1).

It is so **ORDERED.**

The Court directs the Clerk to enter a separate judgment order, and to transmit copies of both orders to the pro se plaintiff, certified mail and return receipt requested, and to counsel of record.

DATED: August 22, 2018

>                 /s/ Irene M. Keeley
>                 IRENE M. KEELEY
>                 UNITED STATES DISTRICT JUDGE